Rockingham
No. 99-551

## THE STATE OF NEW HAMPSHIRE

v.

## KEVIN LANDRY

July 18, 2001

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, attorney, on the brief and orally), for the State.

*James A. Connor*, of Manchester, by brief and orally, for the defendant.

DUGGAN, J. The defendant, Kevin Landry, who has appealed his conviction in Superior Court (*Murphy*, J.) for felony theft by deception, RSA 637:4 (1996), moves to have his case removed from the 3JX docket on the ground that its placement thereon violates his right to due process guaranteed by the New Hampshire Constitution. We hold that the procedures employed in the 3JX docket do not violate due process and therefore deny the defendant's motion.

On August 19, 1999, the defendant was convicted by jury of felony theft by deception. The defendant appealed to this court, arguing insufficiency of the evidence and other issues. In a letter dated

March 27, 2001, the clerk of court notified the defendant that his case had been selected to be heard on the "newly-named '3JX Docket,' . . . to be held on Thursday, April 19, 2001." The clerk's letter explained:

> This docket involves cases which the court believes may not need a full written opinion. The cases on this docket are heard before three supreme court justices, with each side receiving five minutes of uninterrupted argument. If the court has any questions, it will ask them at the end of the five minutes. These cases will receive a written order with reasons for the court's disposition. The decision will be unanimous. Any cases in which the three justices split or which they believe should be the subject of a full written opinion will be referred to the full court. Any such referral will take priority for any rescheduling.
>
> . . . This date is much sooner than your case would be heard if you waited your turn in the queue awaiting argument. Nevertheless, if you believe your case is not appropriate for this treatment, you may file a motion to have your case removed from the 3JX Docket. If you do so, please detail the reasons you believe the case has been inappropriately selected.

The defendant timely moved to have his case removed from the 3JX docket, stating that he had a constitutional right to have his appeal heard by the whole court. The court granted the defendant an opportunity to brief and argue his motion orally. Before us is the question of whether the Due Process Clause of the New Hampshire Constitution, N.H. CONST. pt. I, art. 15, entitles the defendant to: (1) have his appeal heard by five justices; (2) a fifteen-minute argument; and (3) a full written opinion disposing of his case. The defendant also argues that the court was required to articulate standards for placing cases on the 3JX docket.

Because the defendant relies solely upon the State Constitution, we do not engage in a separate federal due process analysis, *see State v. Summers*, 142 N.H. 429, 431-32 (1997), but rather cite federal authority as an aid to our analysis under the State Constitution, *see State v. LaForest*, 140 N.H. 286, 292 (1995).

■ The New Hampshire Constitution does not guarantee a right to appeal. More specifically, it does not provide that appellants are entitled to have their arguments heard by five judges, to fifteen minutes of oral argument, or to a full written opinion disposing of

their cases. Consequently, in assessing the constitutionality of the procedures employed in the 3JX docket, we look to our standard due process analysis. *See State v. Cooper*, 127 N.H. 119, 122 (1985) ("If a State has created appellate courts as 'an integral part of the State trial system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with due process and equal protection." (brackets omitted)); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956); *Evitts v. Lucey*, 469 U.S. 387, 393 (1985). Our due process analysis considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In re Richard A.*, 146 N.H. 295, 298 (2001) (quotation omitted).

The private interest at stake in this case is the deprivation of the defendant's liberty, unquestionably a substantial interest. "Because the private interests at stake in this case are substantial, we must weigh the risk of an erroneous deprivation of those interests against the government's interest." *Id.* at 298 (quotations and brackets omitted).

In assessing the risk of an erroneous deprivation of the defendant's liberty interest, we examine each of the aspects of the 3JX procedure he challenges. We first consider the risk posed by the use of a three-justice panel, rather than the full five-justice court, in deciding 3JX cases. The defendant argues that because on appeal he has the burden of "overturn[ing] a finding of guilt made by a judge or jury below," *Ross v. Moffitt*, 417 U.S. 600, 610 (1973), reducing the number of judges from five to three increases his burden. While the defendant's argument posits an inherent value in having a greater number of justices sitting on any case, his argument fails to consider that certain safeguards have been incorporated into the 3JX procedure to limit the impact of reducing the number of justices. For instance, by statute, the minimum number of supreme court justices constituting a quorum is three, RSA 490:7 (Supp. 2000), thus allowing for disposition of a case by a majority, or two, of the three sitting justices. In the case of the 3JX docket, however, all three members of the panel must agree on the disposition of the

case. If the full complement of three is not in agreement, procedures have been established to reargue the case before the full court on an expedited basis. Moreover, the 3JX procedure also provides that, if after argument, the panel concludes for any reason that the case is more appropriate for consideration by the full court, it will likewise be referred to the full court for reargument. In light of the procedures established specifically to limit the risk of erroneous deprivation, we conclude that there is little if any risk associated with a three-justice 3JX panel. *Accord State v. Mills*, 706 A.2d 953, 955 (Vt. 1998) (holding constitutional Vermont's "rocket docket" employing a three-justice panel rather than the court's full complement of five justices); *cf. Ryan Supply Company and Consol. Under. v. Brett*, 75 So. 2d 721, 721-22 (Miss. 1954) (upholding nine-member Mississippi Supreme Court's power to sit in panels of five).

We next examine the risk of erroneous deprivation of the defendant's liberty interest associated with providing an uninterrupted five minutes of oral argument followed by an unlimited period for questioning by the justices, rather than our usual practice of fifteen minutes of oral argument inclusive of questioning by the justices. There is no constitutional provision guaranteeing an appellant any oral argument, much less a greater period of time for oral argument than that provided to cases argued on the 3JX docket. Indeed, "[o]ral argument on appeal is not an essential ingredient of due process." *Price v. Johnston*, 334 U.S. 266, 286 (1948), *overruled on other grounds by McCleskey v. Zant*, 499 U.S. 467 (1991); *see Lucret Galarza v. Jimenez Oxio*, 440 F. Supp. 47, 49 (D. P.R. 1977). Moreover, the defendant appropriately conceded at oral argument that in some cases "five minutes is probably plenty." Such a time limitation is consistent with our rules, which provide that, although "[o]ral argument shall be limited to not more than 15 minutes to a side (including questions by the court)," it "may be shortened, or dispensed with, by order of the court." SUP. CT. R. 18. While oral argument is of assistance to the court in reaching its decision, we are unpersuaded that shortening it in appropriate cases creates a substantial risk of erroneous deprivation.

Finally, we consider the risk that deciding the case by order, rather than by full written opinion, will result in an erroneous deprivation of the defendant's liberty. The potential risk in deciding cases by order rather than by full opinion is that the court will not be as rigorous in its analysis because the case has no precedential value. This risk is reduced first by the fact that, as with a case disposed of by full opinion, the court must justify the result based on applicable law and must set forth the basis for its decision in the

order. Second, 3JX orders are public documents, available for review and, at present, are published by the New Hampshire Bar Association. The orders are therefore subject to review and criticism by the public. These requirements minimize the risk that the case will be disposed of on an erroneous or impermissible ground. We conclude that issuing a decision in the form of an order creates little or no risk that the defendant will suffer erroneous deprivation of his liberty. *Cf. Johnson v. State*, 847 P.2d 810, 810-12 (Okla. Crim. App. 1993) (holding use of summary opinion format conforms with due process).

■ Having assessed the risk of erroneous deprivation of the defendant's liberty interest associated with the use of the 3JX procedures, we turn now to the governmental interest in utilizing the procedures. In the past thirty years, the supreme court caseload has expanded dramatically — from filings in the range of 100 in the early 1970s to 900 in the late 1990s. *See* Beeson, *Is New Hampshire Prepared to Address Its Appellate Caseload Crisis?*, N.H.B.J., June 2001, at 51, 53. The number of justices sitting on the court has remained constant. Accordingly, we have looked for ways to increase our efficiency while maintaining the highest regard for the rights of those whose cases we hear. The governmental interest at stake is thus twofold: first, the governmental interest coincides with the private interests of the defendant in reaching a fair, accurate decision so as not erroneously to deprive him of his liberty; second, the governmental interest coincides with the interests of all parties to an appeal in having their cases heard and decided in a timely fashion.

■ Considering that the challenged 3JX procedures pose little or no risk of erroneous deprivation of the defendant's liberty and that the government's interest in providing a timely, fair and effective forum for the resolution of matters of all parties before the supreme court is substantial, we conclude that the procedures conform with due process.

The defendant also complains that there is an absence of standards for selecting cases for the 3JX docket. To the contrary, the court considers many factors in its selection decision. The 3JX docket was established to provide expedited treatment for those cases lending themselves to such treatment. In general, we look for cases in which resolution of the issue between the parties is paramount and the precedential value of the case is low. Cases warranting consideration for placement on the docket include: single-issue cases in which the court will apply settled law to the

facts of the case; error-correction cases and cases involving allegations of abuse of discretion in areas where the law is settled; cases in which no substantial issue of law is presented; and cases involving questions of the sufficiency of the evidence. Our selection of a case does not reflect a prejudgment of the outcome of the case. Likewise, our selection of a case does not reflect an assessment of its "importance"; neither the amount in controversy in a civil case nor the gravity of the offense in a criminal case is determinative of our decision. Rather, we endeavor to expedite relatively straightforward cases in which the relevant area of law is settled, thus providing benefits both to the parties, in the form of expedited resolution of their issues, and to the public, in the form of the speedier treatment of all cases that a reduced backlog affords.

The defendant's remaining arguments lack merit and warrant no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322 (1993).

Having concluded that the defendant's opportunity to argue his case on the 3JX docket comports with due process requirements, we deny his motion to remove the case from the 3JX docket.

*Motion denied.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.