No. 95-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

CRAIG WILLIAM FRAZIER,
ALL PAROLEES and PROBATIONERS
SENTENCED PRIOR TO JULY 1, 1993,

        Plaintiffs and Appellants,

    v.

MONTANA STATE DEPARTMENT OF CORRECTIONS,
by and through MONTANA ADULT PROBATION
and PAROLE, et al.,

        Defendants and Respondents.

FILED

JUN 20 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
                 In and for the County of Silver Bow,
                 The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

            Craig William Frazier, Pro Se, Deer Lodge,
            Montana

        For Respondents:

            David L. Ohler, Lois Adams! Department of
            Corrections and Human Services, Helena,
            Montana

                        Submitted on Briefs:  May 9, 1996

                                 Decided:  June 20, 1996

Filed:

_____
          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Craig William Frazier (Frazier), pro se, appeals from the order and memorandum of the Second Judicial District Court, Silver Bow County, determining that the supervision fee in § 46-23-1031(1)(a), MCA, is constitutional. We affirm.

The following issue is raised on appeal:

Did the District Court err in determining that § 46-23-1031(1)(a), MCA, does not violate the prohibition against ex post facto laws as applied to parolees and probationers sentenced prior to July 1, 1993?

Frazier alleges that HB 673, passed by the 1993 Montana Legislature and codified at § 46-23-1031, MCA, which requires probationers and parolees to pay a $10 per month supervision fee violates the prohibition against ex post facto laws contained in Article I, § 10 of the United States Constitution and Article II, § 31 of the Montana Constitution. Section 46-23-1031, MCA, provides in relevant part:

> (1)(a) Except as provided in subsection (1)(b), a probationer or parolee shall pay a supervisory fee of $120 a year, prorated at $10 a month for the number of months under supervision. The fee must be collected by the clerk of the district court with jurisdiction during the probationer's or parolee's period of supervision under this part.
> (b) The court or the board may reduce or waive the fee or suspend the monthly payment of the fee if it determines that the payment would cause the probationer or parolee a significant financial hardship.

The ex post facto clause, Article II, § 31 of the Montana Constitution, provides that "[n]o ex post facto law nor any law impairing the obligation of contracts, or making any irrevocable grant of special privileges, franchises, or immunities, shall be

2

passed by the legislature."

In reviewing a district court's conclusions of law we determine whether the district court's interpretation of the law is correct. **Stratemeyer** v. Lincoln County (Mont. 1996), 915 P.2d 175, 177, 53 St.Rep. 245, 246 (citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04). Here, the District Court concluded that:

> Since the costs and fees assessed pursuant to § 46-23-1031, Mont. Code Ann., are for the costs of providing supervision and programs by the department and are not imposed as a penalty or punishment for the **crime** for which the offender was convicted, application of the monthly supervision fees to all offenders on active supervision on or after the effective date of the legislation does not constitute an ex post facto application of the statute.

Frazier asserts that he was sentenced prior to the enactment of § 46-23-1031, MCA, and that the statute cannot be retroactively applied to him and other probationers and parolees similarly situated. We disagree.

"[F]or a criminal or penal law to be ex *post facto* . . . it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Bae v. Shalala (7th Cir. 1995), 44 F.3d 489, 492 (quoting Weaver v. Graham (1981), 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17). This Court has held that:

> **It is** settled, by decisions of this Court so well known that their citation **may** be dispensed with, that any statute which punishes as **a crime** an act previously committed, which was innocent when done; *whichmakes more burdensome the punishment for a crime, after its* commission, or which deprives one charged with **a crime** of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

3

State v. Leistiko (1992), 256 Mont. 32, 36, 844 P.2d 97, 99-100 (quoting Beazell v. Ohio (1925), 269 U.S. 167, 169-70, 46 S.Ct. 68, 68-69, 70 L.Ed. 216).

Frazier relies on this Court's opinion in Leistiko to support his argument that the supervision fee violates the prohibition against ex post facto laws. In Leistiko, we stated that in determining whether legislation violates the ex post facto clause a two-part test must be used. First, the law must be retrospective and, second, the law must disadvantage the affected offender. Leistiko, 844 P.2d at 100 (citing Miller v. Florida (1987), 482 U.S. 423, 430, 107 S.Ct. 2246, 2251, 96 L.Ed.2d 351). A law is retrospective if it changes the legal consequences of actions committed prior to the law's effective date. Leistiko, 844 P.2d at 100. As to the second factor, in Leistiko, we determined that "the additional restitution ordered . . . constitutes an unconstitutional increase in punishment which Leistiko could not have foreseen at the time he committed the crime . . . ." Leistiko, 844 P.2d at 100.

Leistiko is distinguishable from the instant case. In Leistiko, we determined that the district court erred in increasing Leistiko's restitution obligation. Under the statute in effect at the time of Leistiko's initial sentencing the district court did not have the discretion to add additional terms and conditions to the suspended sentence. A later amendment to the statute gave the district court this discretion. However, we determined that application of the later statute to Leistiko and imposition of an

4

additional $10,000 in restitution violated the ex post facto prohibition and constituted an unconstitutional increase in punishment. Leistiko, 844 P.2d at 100. In the instant case, a civil administrative fee has been assessed against Frazier to help defray the costs of supervision. A civil sanction will implicate ex post facto concerns only if it can be fairly characterized as punishment. Bae, 44 F.3d at 492 (citing United States v. Halper (1989), 490 U.S. 435, 447-48, 109 S.Ct. 1892, 1901-02, 104 L.Ed.2d 487).

Relying on the legislative history, the Department of Corrections asserts that the purpose of the supervision fee is to help defray the costs of probation and parole by charging those people benefitting from the system. The sponsor of the legislation stated that he was not attempting to introduce punitive legislation, rather, he was attempting to implement better community based programs for probationers and parolees.

The District Court determined that the "intent of [the supervisory feel is not to punish but to make the offender more responsible for his rehabilitation in the form of paying for supervision services rendered." In addition, the District Court aptly noted that "the purpose of Montana's imposition of probation and parole supervisory fees is to assist in making community corrections an effective alternative to incarceration through holding the offender accountable for his rehabilitation." We agree. The supervisory fee facilitates community corrections which serve, not as punishment, but as an alternative to imprisonment.

Section 46-23-1031(1)(b), MCA, provides that the court or the board can "reduce or waive the fee or suspend the monthly payment of the fee if it determines that the payment would cause the probationer or parolee a significant financial hardship." The Department asserts that "[i]f probationers and parolees fail to pay the fee, they have not been and will not be returned to [Montana State Prison] ." The Department concludes that "[t]herefore, probationers and parolees should never experience financial hardship, nor parole revocation, solely as a result of a failure to pay the fee."

Under the supervision fee statute, Frazier is not being punished for his criminal activities, rather, he is helping to pay the costs of his supervision. A civil sanction will be deemed to be punishment in the constitutional sense only if the sanction "may not fairly be characterized as remedial, but *only* as a deterrent or retribution." Bae, 44 F.3d at 493 (citing Halper, 490 U.S. at 449). The legislative history of the supervision statute does not reveal an intent to punish. Further, we note that even if the supervision statute has a deterrent purpose that purpose does not automatically mark the statute as a form of punishment. Bae, 44 F.3d at 494 (citing Montana Department of Revenue v. Kurth Ranch (1994), ___ U.S. ___, 114 S.Ct. 1937, 1946, 128 L.Ed.2d 767). The United States Supreme Court has consistently required "'unmistakable evidence of punitive intent' to characterize a sanction as punishment." Bae, 44 F.3d at 494 (citing Selective Serv. Sys. v. Minnesota Pub. Interest Research Group (1984), 468 U.S. 841, 855

6

n.15, 104 S.Ct. 3348, 3357 n.15, 82 L.Ed.2d 632; Fleming v. Nestor (1960), 363 U.S. 603, 619, 80 S.Ct. 1367, 1377, 4 L.Ed.2d 1435). In the instant case, there is no such "unmistakable evidence of punitive intent."

The legislative intent of the supervision statute does not evidence an intent to punish, rather, the intent of the fee is to help defray the costs of supervision and to hold probationers and parolees accountable. These factors support our determination that the supervision fee is administrative as opposed to punitive in nature and cannot be fairly characterized as punishment. We hold, therefore, that the District Court was correct in concluding that the supervision fee set forth in § 46-23-1031, MCA, does not violate the prohibition against ex post facto laws.

Affirmed

_____
Justice

We concur,

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Terry N. Trieweiler dissenting

I dissent from the majority opinion. I conclude that the supervision fee imposed on Craig William Frazier nearly seven years after the commission of his crime is indistinguishable from the additional restitution ordered in *State v. Leistiko* (1992), 256 Mont. 32, 844 P.2d 97, and that the same result is compelled by the reasoning in that case.

We held in *Leistiko* that:

> We use a two-part test to determine whether a statute violates the ban on *ex post facto* laws: (1) the law must be retrospective, and (2) it must disadvantage the offender affected by it. *Miller v. Florida* (1987), 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351, 360-61. A law is retrospective if it changes the legal consequences of actions committed before its effective date. *Miller, 482* U.S. at 430, 107 S.Ct. at 2451.

*Leistiko*, 256 Mont. at 36-37, 844 P.2d at 100.

In *Leistiko* the district court ordered that the defendant pay additional restitution to his victim pursuant to a change in the law which occurred after his conviction. We held that the order requiring additional restitution violated the prohibition against *ex post facto* laws because it added $10,000 to the cost of his crime and placed an additional condition on his parole which could subject him to additional incarceration. *Leistiko,* 256 Mont. at 37, 844 P.2d at 100. Both of those circumstances also exist in this case.

The supervisory fee imposed on Frazier was retrospective because it changed the legal consequences of crimes he committed before the effective date of the fee. It disadvantaged Frazier

8

because it increased the legal cost of his crime by an amount in excess of $5000. Furthermore, contrary to the representations of the Montana State Department of Corrections, which the majority opinion accepts at face value, Frazier was served with a notice by his probation and parole officer that if he did not pay the supervisory fee he could have his "probation/parole revoked." Therefore, both of the conditions which this Court found controlling in *Leistiko* exist in nearly the exact form in this case.

The majority attempts to distinguish this case from *Leistiko on* the grounds that Frazier is not being punished by the supervisory fee, but is merely helping to pay the cost of his supervision. Neither was *Leistiko* being punished by the requirement that he pay restitution. He was merely helping to pay his victim for the consequences of his crime. In this case, the State is being reimbursed. In *Leistiko,* the victim was being reimbursed.

The majority opinion attributes some significance to the fact that it was not the Legislature's intent to punish those parolees who are required to pay thousands of dollars in supervision fees even though that requirement was not in existence at the time of their crimes. The Legislature's intent is not relevant to our constitutional analysis of whether § 46-23-1031(1)(a), MCA, violates Article II, Section 31, of the Montana Constitution, which prohibits *ex post facto laws.*

There is no practical basis on which to distinguish the facts in this case from the facts in *Leistiko.* There is no justification

9

for refusing to apply the test for *ex post facto* laws which we have previously articulated to the facts in this case.

For these reasons, I dissent from the majority opinion.

_____
Jus ice

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

_____
Justice

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Craig William Frazier
700 Conley Lake Road
Deer Lodge, MT 59722

Deirdre Caughlan
Dunlap & Caughlan, P.C.
27 West Broadway
Butte MT 59701

David L. Ohler, Lois Adams
Department of Corrections and Human Services
1539 Eleventh Avenue
Helena MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *A. Gallagher*
Deputy