Darryl V. JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CF–1309.

District of Columbia Court of Appeals.

Argued Sept. 17, 1998.
Decided Oct. 8, 1998.

Bradford P. Johnson, Washington, DC, appointed by this court, for appellant.

William F. Gould, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, and Deborah I. Sines, Assistant United States Attorneys, were on the brief for appellee.

Before STEADMAN and RUIZ, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

Following a jury trial, Darryl Jones was convicted of attempt to commit robbery while armed and felony murder while armed. On appeal, he contends that the application to his case of an evidentiary rule passed subsequent to the crime for which he was tried, but prior to his trial, violated the Ex Post Facto Clause of the United States Constitution. We affirm.

I.

On April 1, 1994, James Alexander was stabbed to death during an attempted robbery. Although other witnesses observed a man fitting Jones' description chasing the victim and later fleeing the scene of the crime, only one witness, Katrina Holloway, was an eyewitness to the murder itself. Under oath before the Grand Jury, Ms. Holloway testified that she was walking with

Jones just before the murder occurred and saw him stab the victim. Jones was charged with attempted robbery while armed, felony murder while armed, and premeditated murder while armed.

At Jones' trial, Ms. Holloway denied knowing or remembering anything substantive about the events of the evening of the murder. She directly contradicted her testimony before the Grand Jury by denying that she saw Jones stab the victim. The government, over Jones' objections, sought to admit Ms. Holloway's Grand Jury testimony into evidence. The trial judge admitted the evidence, and pursuant to D.C.Code § 14–102(b) (1995 Repl.), instructed the jury that they could consider the Grand Jury testimony both for purposes of impeachment and as substantive evidence. At the close of the government's case, the trial judge dismissed the first-degree premeditated murder count on Jones' motion for judgment of acquittal. He was convicted of attempted robbery while armed and felony murder while armed.

## II.

█ Jones contends that the admission of Ms. Holloway's Grand Jury testimony as substantive evidence violated the Ex Post Facto Clause of the Constitution.[1] At the time the crimes with which Jones was charged were committed, prior inconsistent statements made under oath were admissible at trial only for impeachment purposes. *See* D.C.Code § 14–102(b) (1981); *Gordon v. United States*, 466 A.2d 1226 (1983). Prior to Jones' trial, D.C.Code § 14–102 was amended.[2] Under the amended statute, certain of a witness's prior inconsistent state-

ments are admissible as substantive evidence. D.C.Code § 14–102(b) (1995 Repl.).[3] Jones argues that the retroactive application of this new law changed the evidence law to his disadvantage and therefore violated the Ex Post Facto Clause of the Constitution. We review this constitutional law question *de novo. See Littlejohn v. United States*, 705 A.2d 1077, 1082 (D.C.1997).

█ The United States Constitution prohibits the imposition of "ex post facto" laws. U.S. CONST. art. I, §§ 9, 10. Although literally translated the phrase "ex post facto" refers to any law passed "after the fact," the Supreme Court has long adhered to a more narrow interpretation of the phrase:

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). As the Court in cases following *Calder* made clear, however, the phrase "legal rules of evidence" "was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes." *Collins v. Youngblood*, 497 U.S. 37, 43 n. 3, 110 S.Ct. 2715,

---

1. Article I, Sec. 9, Clause 3 and Sec. 10, Clause 1 of the United States Constitution contain the prohibitions against ex post facto laws.

2. Prior to the 1995 amendment, D.C.Code § 14–102 read as follows:

When the court is satisfied that the party producing a witness has been taken by surprise by the testimony of the witness, it may allow the party to prove, for the purpose of affecting the credibility of the witness, that the witness has made to the party or to his attorney statements substantially variant from his sworn testimony about material facts in the cause. Before such proof is given, the circumstances of the supposed statement sufficient to designate the par-

ticular occasion must be mentioned to the witness, and he must be asked whether or not he made the statements and if so allowed to explain them.

3. D.C.Code § 14–102(b), as amended, reads in relevant part as follows:

A statement is not hearsay if the declarant testifies at the trial or hearing and the statement is (1) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. . . .

This language is identical to that found in FED. R.EVID. Rule 801(d)(1).

111 L.Ed.2d 30 (1990). The retroactive application of those procedural or evidentiary changes that "leave[ ] untouched the nature of the crime and the amount or degree of proof essential to conviction" does not violate the Ex Post Facto Clause. *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 28 L.Ed. 262 (1884). The Court recently quoted favorably the formulation set forth in *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), in which the reference to "legal rules of evidence" was omitted:

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

*Youngblood, supra,* 497 U.S. at 42, 110 S.Ct. 2715 (quoting *Beazell, supra,* 269 U.S. at 169–70, 46 S.Ct. 68). As the Court explained in *Youngblood,* "[t]he *Beazell* formulation is faithful to our best knowledge of the original understanding of the Ex Post Facto Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." 497 U.S. at 43, 110 S.Ct. 2715.

■ The focus of an inquiry into whether retroactive application of a statute implicates the Ex Post Facto Clause, then, is whether that statute alters the definition of the crime, increases the punishment for criminal acts, or deprives the defendant of a previously available defense. This court explained the meaning of the phrase "deprives the defendant of a previously available defense" as it relates to statutes affecting the admissibility of evidence in *Dixon v. United States,* 287 A.2d 89, 97 (D.C.1972): "[s]o long as the statutory change affecting the admissibility of evidence does not increase the punishment or change the ingredients of the offense or the ultimate facts necessary to establish guilt, it does not deprive the accused of a right of defense which he enjoyed under the law at the time he committed the offense charged." (Citations omitted.) In *Dixon,* the statute at issue was one that permitted the introduction of prior convictions of the defendant that were not automatically admissible at the time the crime of which he was accused was committed. This court held that the statute's application during the defendant's trial did not violate the Ex Post Facto Clause because the introduction of the defendant's past convictions "did not deprive him of any defense, modify the elements of proof, or deny him any substantial immunity" that had been available to him under the previous statute.[4] *Id.* at 97.

In *Dixon, supra,* we relied on interpretations of the Ex Post Facto Clause as it relates to changes in rules of evidence by the Supreme Court. *See Thompson v. Missouri,* 171 U.S. 380, 386–87, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (upholding the retroactive application of a statute making admissible handwritten documents as handwriting exemplars); *Hopt, supra,* 110 U.S. at 590, 4 S.Ct. 202 (upholding the retroactive application of a statute making felons competent to testify). Even though the retroactive application of such evidentiary laws may disadvantage a defendant, the Court explained, so long as the laws do not increase the punishment, change the ingredients of the offense, or change the facts necessary to establish guilt, "[s]uch regulations of the mode in which the facts constituting guilt may be placed before the jury can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged." *Thompson, supra,* 171

---

**4.** In contrast, in the cases on which Jones relies the retroactive applications of the laws in question, in addition to working to the defendant's disadvantage, either denied the defendant of a defense, modified an element of proof, or denied the defendant an immunity that existed under the previous statute. *Bowyer v. United States,* 422 A.2d 973 (D.C.1980), related to the retroactive application of a law that eliminated the require-ment of corroboration in a rape case, resulting in less proof being necessary to sustain a conviction than had been necessary at the time the crime was committed. *United States v. Jackson,* 528 A.2d 1211 (D.C.1987), related to the application of a law abrogating the "year and a day rule," a rule that, at the time the crime for which the defendant was charged took place, granted him total immunity from prosecution for murder.

U.S. at 386, 18 S.Ct. 922 (quoting *Hopt, supra,* 110 U.S. at 588–89, 4 S.Ct. 202).

Applying this standard to the statute in this case indicates that the application of amended D.C.Code § 14–102(b) during Jones' trial did not violate the Ex Post Facto Clause of the Constitution. There is no question that application of the statute to Jones' case worked to his disadvantage; had Ms. Holloway's Grand Jury testimony not been admitted as substantive evidence, the jury well may have reached a different result. However, as the Supreme Court has stressed, more is required for the retroactive application of a statute to violate the Ex Post Facto Clause. *See Youngblood, supra,* 497 U.S. at 50, 110 S.Ct. 2715 (explaining that reading the clause to include "any change which 'alters the situation of a party to his disadvantage' " "departs from the meaning of the Clause"). D.C.Code § 14–102(b), as amended, did not criminalize behavior not previously a crime or make a punishment more burdensome. Nor did it deprive Jones of a defense by "chang[ing] the ingredients of the offense or the ultimate facts necessary to establish guilt." *Dixon, supra,* 287 A.2d at 97. Its retroactive application during Jones' trial therefore did not violate the Ex Post Facto Clause.

*Affirmed.*[5]

---

**5.** Jones was sentenced both for felony murder and the predicate felony. On remand, the trial court must resentence. *See Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).